UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MASSACHUSETTS BAY
INSURANCE COMPANY,

                Plaintiff,

    v.

WALFLOR INDUSTRIES, INC., et al.,

                Defendants.

CASE NO. C18-0791JLR

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Before the court are the parties' cross motions for summary judgment, including: (1) Plaintiff Massachusetts Bay Insurance Company's ("Massachusetts Bay") motion for summary judgment (Plf. MSJ (Dkt. # 33)), and (2) Defendants John Ural, Mike Czerwinski, Jim Hewitt (collectively, "Individual Defendants"), and Walflor Industries, Inc.'s ("Walflor") (collectively, "Defendants") motion for summary judgment (Def. MSJ (Dkt. # 31)).  Massachusetts Bay seeks (1) a declaration that it has no duty to defend

Defendants in the lawsuit presently pending in King County Superior Court, entitled *Stuc-O-Flex International, Inc. v. Low and Bonar, Inc.*, *et al.*, No. 17-2-30700-9 ("the Underlying Lawsuit"), and (2) a ruling that it is entitled to reimbursement of the monies it has already paid to defend Defendants in the Underlying Lawsuit. (Plf. MSJ at 1.) Defendants, on the other hand, seek a declaration that Massachusetts Bay owes them a duty to defend in the Underlying Lawsuit. (Def. MSJ at 1.) If, however, Massachusetts Bay does not owe them a duty to defend, Defendants seek an order that Massachusetts Bay is not entitled to reimbursement of the defense costs it has already incurred in the Underlying Lawsuit, or in the alternative, an order certifying that issue to the Washington Supreme Court. (*See id.*) The court has considered the motions, the parties' submissions in support of and opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Massachusetts Bay's motion and DENIES Defendants' motion.

---

[1] Massachusetts Bay requests oral argument on its motion. (Plf. MSJ at 1.) The general rule is that the court should not deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied. *Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964). Here, the court denies Defendants' motion for summary judgment, and so, the court may and does deny Massachusetts Bay's request for oral argument. Defendants have not requested oral argument on either motion (*see* Def. MSJ at title page; Def. Resp. (Dkt. # 36) at title page), and Federal Rule of Civil Procedure 56 does not require oral argument where the opposing party does not request it. *See, e.g.*, *Demarest v. United States*, 718 F.2d 964, 968 (9th Cir. 1983); *see also* Fed. R. Civ. P. 56. Moreover, oral argument is not necessary where the non-moving party suffers no prejudice. *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984). "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id.* The parties have thoroughly briefed the issues, and the court concludes that oral argument would not be of assistance here. *See* Local Rules W.D. Wash. LCR 7(b)(4).

## II.    BACKGROUND

### A.  Insurance Policies

Massachusetts Bay issued a business owners policy to Walflor for the period December 8, 2015, to December 8, 2016.  (Compl. (Dkt. # 1) ¶ 3.1 (identifying policy number OD2-A797754-00).)  Walflor renewed the policy for the period December 8, 2016, to December 8, 2017.  (*Id.* (identifying policy number OD2-A797754-01).)

The policies provide coverage, in pertinent part, as follows:

### 1. Business Liability
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damages" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. . . .

\*\*\*\*\*\*\*\*\*\*

**b.** This insurance applies:

\*\*\*\*\*\*\*\*\*\*

**(2)** To "personal and advertising injury" caused by an offense arising out of your business . . . .

(Colville Decl. (Dkt. # 35) ¶ 10, Ex. 8 (attaching policy number OD2-A797754-00) at 67-68; *id.* ¶ 11, Ex. 9 (attaching policy number OD2-A797754-01) at 90-91; 11/21/18 Alvord Decl. (Dkt. # 32) ¶ 3, Ex. 2 at 67.)  The policies further provide:

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

\*\*\*\*\*\*\*\*\*\*

//

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**\*\*\*\*\*\*\*\*\*\***

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Colville Decl. ¶ 10, Ex. 8 at 82-83; *id.* ¶ 11, Ex. 9 at 108; 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 81-82.) The policies define "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. . . ." (Colville Decl. ¶ 10, Ex. 8 at 80; *id.* ¶ 11, Ex. 9 at 81; 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 80.)

In addition, the policies contain the following exclusion:

**2. Additional Exclusions Applicable To "Personal and Advertising Injury"**

This insurance does not apply to "Personal and advertising injury":

**\*\*\*\*\*\*\*\*\*\***

**m. Infringement of Copyright, Patent, Trademark or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, and trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Colville Decl. ¶ 10, Ex. 8 at 75-76; *id.* ¶ 11, Ex. 9 at 100-01.)

*//*

Finally, each policy contains an endorsement entitled, "**WASHINGTON CHANGES – DEFENSE COSTS**," which provides:

> The following applies to any provision in this Policy, or in any endorsement attached to this Policy that sets forth a duty to defend:
>
> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or payment of defense costs and to seek reimbursement for defense costs.

(*Id.* ¶ 10, Ex. 8 at 137; *id.* ¶ 11, Ex. 9 at 157.)

## B. Underlying Lawsuit

In 2013, Stuc-O-Flex and Waterway Rainscreen entered into a Distributorship Agreement, under which Waterway Rainscreen agreed to produce certain products for Stuc-O-Flex's exclusive distribution in the United States and Canada. (Colville Decl. ¶ 3, Ex. 1 ("Underlying Lawsuit Compl."),[2] Ex. B ("Distributorship Agreement").)[3] In early 2016, Individual Defendants created Walflor, which acquired all of Waterway Rainscreen's assets and began supplying certain products to Stuc-O-Flex for distribution. (Underlying Lawsuit Compl. ¶ 23.) According to the Underlying Lawsuit complaint, "in 2016 and 2017, Stuc-O-Flex . . . uncovered evidence that Walflor and [Waterway

---

[2] Using the page numbers generated by the court's electronic filing system, the complaint in the Underlying Lawsuit appears at pages 2-33 of docket number 35-1.

[3] Using the page numbers generated by the court's electronic filing system, the Distributorship Agreement appears at pages 27-33 of docket number 35-1.

Rainscreen] sold . . . Stuc-O-Flex [t]rade-[n]ame-marked [p]roducts to multiple parties in

the United States and Canada for years in violation of the [Distributorship Agreement]

and without Stuc-O-Flex's consent, resulting in millions of dollars of lost profit." (*Id.*

¶ 26.)

     As a result, Stuc-O-Flex sued Defendants, Waterway Rainscreen, and Low and

Bonar, Inc. (the current owner of Walflor), alleging breach of the Distributorship

Agreement, tortious interference with a business expectancy, trade name infringement,

and a violation of Washington's Consumer Protection Act ("CPA"), RCW § 19.86.020*, et

seq*. (Underlying Lawsuit Compl. ¶¶ 35-59.) In its claim for tortious interference with a

business expectancy, Stuc-O-Flex asserts "[s]pecifically" that "Defendants engaged in the

[alleged] . . . wrongful conduct by conspiring to wrongfully sell and acquire [Waterway

Rainscreen and Walflor] so as to side-step the obligations of the [Distributorship

Agreement] and/or without complying with the same in the transitions . . . ." (*Id.* ¶ 49.)

In its claim for violation of the CPA, Stuc-O-Flex alleges that Defendants' "unfair

business practices include . . . the conduct that constitutes a breach of the [Distributorship

Agreement] . . . ." (*Id.* ¶ 56.)

     Stuc-O-Flex later amended the complaint to replace its cause of action for trade

name infringement with a cause of action for trademark violation and to add a cause of

action for alter ego or piercing the corporate veil. (Colville Decl. ¶ 4, Ex. 2 ("Underlying

Lawsuit Am. Compl.").)[4] In its amended complaint, Stuc-O-Flex alleges in its tortious

---

[4] Using the page numbers generated by the court's electronic filing system, the amended
complaint in the Underlying Lawsuit appears at pages 35-61 of docket number 35-1.

interference claim that "Defendants intentionally interfered with . . . Stuc-O-Flex's binding [Distributorship Agreement] . . . and sought to deny . . . Stuc-O-Flex the benefit of its bargain under the [Distributorship Agreement]." (*Id.* ¶ 5.4; *see also id.* ¶ 5.5.) Stuc-Flex also alleges that it "has been and will continue to be damaged as a result of Defendants' tortious interference with rights and privileges afforded to . . . Stuc-O-Flex pursuant to the [Distributorship Agreement], in an amount to be proven at trial." (*Id.* ¶ 5.8.)

### C. Defendants' Insurance Claims

On January 16, 2018, Individual Defendants tendered the Underlying Lawsuit's original complaint to Massachusetts Bay under Walflor's insurance policy. (Colville Decl. ¶ 5, Ex. 3.) Massachusetts Bay initially concluded that the allegations in the complaint did not fall within the policy's coverage for damages for "bodily injury," "property damage," or "personal or advertising injury," and accordingly, denied the claim. (*Id.* ¶ 6, Ex. 4.) On April 5, 2018, Individual Defendants responded by asserting that Massachusetts Bay's duty to defend was triggered under the policy's coverage for "personal and advertising injury." (*Id.* ¶ 7, Ex. 5.) Following this communication, on April 13, 2018, Massachusetts Bay agreed to defend Defendants under a full reservation of rights. (*Id.* ¶ 8, Ex. 6.) In this reservation of rights letter, Massachusetts Bay specifically informed Defendants that it reserved the right "to seek reimbursement of any defense costs paid if it is later determined that none of the claims or damages sought are covered under the policies," and Massachusetts Bay quoted from the policies' "**WASHINGTON CHANGES – DEFENSE COSTS**" endorsement. (*Id.* at 3.)

On October 18, 2018, after Stuc-O-Flex filed an amended complaint in the Underlying Lawsuit, Massachusetts Bay again concluded that the insurance policies did not provide coverage for the losses alleged. (Colville Decl. ¶ 9, Ex. 7.) Nevertheless, Massachusetts Bay agreed to continue to defend Defendants under a complete reservation of rights and to seek reimbursement of any defense costs it paid if a court later determined that the policies did not cover the alleged losses. (*See id.* at 10-11.)

**D. The Present Suit**

On May 20, 2018, Massachusetts Bay filed the present action for (1) declaratory relief that it has no obligations to Defendants under the policy at issue (Compl. ¶¶ 4.1-4.3), and (2) reimbursement of the defense costs it paid in the Underlying Lawsuit (*id.* ¶¶ 5.1-5.4). On November 21, 2018, the parties filed cross motions for summary judgment. (*See* Def. MSJ; Plf. MSJ.) The court now considers these motions.

## III.    ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine

dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)). The court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)); *see also ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." (citations and internal quotation marks omitted)).

## B.  Interpretation of Insurance Contracts and the Duty to Defend

"In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000) (internal quotations omitted); *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash.

2002) ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect."). Ambiguities are resolved against the drafter-insurer and in favor of the insured. *Weyerhaeuser Co.*, 15 P.3d at 122. "A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (quoting *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998)). However, if the language of the policy is clear and unambiguous, the court must enforce the policy as it is written and may not modify the policy or create ambiguity where none exists. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994); *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013) ("A court . . . may not interpret a policy in such a way that it creates nonexistent ambiguities that result in the policy being construed in favor of the insured.").

The duty to defend is triggered "if the insurance policy conceivably covers allegations" against the insured. *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010); *see also Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). Moreover, the allegations against the insured are "liberally construed" in favor of triggering the duty. *Truck Ins. Exch.*, 58 P.3d at 282. An insurer may not invoke an equivocal interpretation of the law or the policy to relieve itself of the duty to defend. *Woo v. Fireman's Fund Ins. Co.*, 208 P.3d 557, 564 (Wash. Ct. App. 2009). "Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy." *Nat'l Sur. Corp. v. Immunex Corp.,* 297 P.3d 688, 691 (Wash. 2013) (citing *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998)). If the insurer remains uncertain

about its duty to defend, the insurer must provide a defense under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. *Truck Ins. Exch.*, 58 P.3d at 282.

If a claim could impose liability on the insured in a manner that is within the policy's coverage, the court must examine the policy to determine if any policy exclusion "clearly and unambiguously applies to bar coverage." *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983 P.2d 707, 709-12 (Wash. Ct. App. 1999)). If so, there is no duty to defend. *Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016). "Exclusionary clauses contained in insurance policies are strictly construed against the insurer." *Stouffer & Knight v. Cont'l Cas. Co.*, 982 P.2d 105, 109 (Wash. Ct. App. 1999).

Because duty to defend cases typically turn on purely legal questions of interpretation of insurance contracts and complaints, "they are routinely resolved at the summary judgment stage." *Evanston*, 158 F. Supp. 3d at 1114.

**C. Personal and Advertising Injury**

As described above, the insurance policies at issue provide coverage for sums, which the insured becomes legally obligated to pay as damages because of "personal and advertising injury." *See supra* § II.A; (*see also* Colville Decl. ¶ 10, Ex. 8 at 67-68; *id.* ¶ 11, Ex. 9 at 90-91; 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 67.) Defendants argue that the allegations in the Underlying Lawsuit's complaint and amended complaint can be read to allege three separate "personal and advertising injury" offenses as those offenses are defined in the policies. (*See* Def. MSJ at 5-13; *see also* Def. Resp. at 5-12.) Those

"offenses" include: (1) product disparagement, as defined in Subpart d, (2) the use of another's advertising idea, as defined in Subpart f, and (3) infringing upon another's trade dress or slogan, as defined in Subpart g. *See supra* § II.A. Massachusetts Bay argues that these same three policy provisions or "offenses" do not require it to provide a defense with respect to the Underlying Lawsuit. (Plf. MSJ at 7-17; Plf. Resp. (Dkt. # 39-1) at 3-14.) The court now considers each such policy provision in turn and whether the complaints in the Underlying Lawsuit can be read to allege "personal and advertising injury" offenses as those offenses are defined in the policies.

### 1. Product Disparagement

Subpart d of the definition of "personal and advertising injury" describes the following offense: "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 81-82.) The offense requires both disparagement of a claimant's products and "publication" of the disparaging "material." (*See id.*)

Defendants argue that Subpart d requires Massachusetts Bay to provide a defense because the complaints in the Underlying Lawsuit, liberally construed, allege that Walflor publishes in advertisements that it sells "Waterway Rainscreen" but instead delivers a lower-quality "generic black drain mat," which harms the reputation of Stuc-O-Flex's products and damages Stuc-O-Flex. (Def. Resp. at 5-6.) Specifically, Defendants assert that the "Waterway Rainscreen" invoices that they allegedly send to their customers qualify as a "publication" under Subpart d; and when Defendants

allegedly deliver a "generic black drain mat" instead, they "disparage" Stuc-O-Flex's product. (Def. MSJ at 7-8.) Defendants argue that "Stuc-O-Flex is essentially suing [D]efendants for communicating something like this to customers: 'This low-quality generic black drain mat that we delivered to you is Waterway Rainscreen.'" (Def. Reply (Dkt. # 41) at 1.) Defendants point to Stuc-O-Flex's allegations in its original complaint that Defendants "manufactur[ed] lower-quality marked [p]roducts, with poor material, without Stuc-O-Flex's inspection or consent" and "this conduct negatively affect[ed] ultimate end-users of the [p]roducts as the [p]roducts are less effective to prevent water accumulation, along with other uses." (*See* Underlying Lawsuit Compl. ¶ 57.) Defendants argue that these allegations in combination with allegations from Stuc-O-Flex's amended complaint indicating that customers who Defendants invoiced for "Waterway Rainscreen" actually received generic products instead (*see* Underlying Lawsuit Am. Compl. ¶ 6.10), impliedly state a claim for product disparagement within the meaning of Subpart d (*see* Def. Resp. at 2 ("The original [c]omplaint informs the [a]mended [c]omplaint's allegations regarding 'generic black drain mat' by alleging that [D]efendants used lower quality materials and that this negatively impacted Stuc-O-Flex's reputation.")).

Massachusetts Bay contends that Defendants' construction of Stuc-O-Flex's allegations, even liberally construed, stretches the complaints in the Underlying Lawsuit too far. (*See* Plf. Resp. at 3-5.) A claim for product disparagement must allege: (1) a false statement; (2) that impugns the quality or integrity of the plaintiff's goods or services; and (3) special damages in the form of lost profits from the loss of specific sales

to a specifically identified purchaser that would have occurred but for that purchaser

hearing the false statement and declining to engage in that purchase. *Microsoft Corp. v.*

*Zurich Am. Ins. Co.*, No. C00-521P, 2001 WL 765871, at *6 (W.D. Wash. July 2, 2001)

(citing *Restatement (Second) Torts* § 623A (1977)). As Massachusetts Bay points out,

"[t]his is virtually the opposite of what Stuc-O-Flex is claiming" in the Underlying

Lawsuit. (Plf. Resp. at 4.) Indeed, Stuc-O-Flex asserts that too many people are buying

Stuc-O-Flex products from Defendants in violation of the parties' Distributorship

Agreement. (*See, e.g.*, Underlying Lawsuit Am. Compl. ¶ 3.38 (alleging that Defendants

"proceeded to manufacture and sell rainscreen products to a number of different entities,

including Stuc-O-Flex's competitors, without Stuc-O-Flex's permission"); *id.* ¶ 4.10

(alleging that Defendants "manufactured and sold rainscreen products to a number of

different entities, including Stuc-O-Flex's competitors, without Stuc-O-Flex's permission

in violation of the [Distributorship Agreement]").)

  In *Microsoft v. Zurich*, the court analyzed a policy provision that is nearly

identical to Subpart d of the present policies. *See* 2001 WL 765871, at *2. The

underlying complaints in that case brought claims for various anti-trust violations, but

like the Underlying Lawsuit complaints here, none "expressly state[d] a cause of action

for the common law tort of product disparagement." *Id.* Nevertheless, "at least some of

the complaints include[d] factual allegations that Microsoft disparaged its competitors'

products and engaged in so-called 'FUD' (fear, uncertainty, and doubt) campaigns which

were intended to undermine their competitors' products." *Id.* Thus, similar to

Defendants here, Microsoft argued that coverage was triggered by the "disparagement"

clause in the disputed policies because the underlying complaints included factual

allegations that Microsoft had levied disparaging comments at its competitors.  *Id.* at *3.

The court rejected Microsoft's argument, reasoning that, although "the underlying

complaint need not set forth the precise cause of action covered in the disputed policy, it

must at least set forth sufficient facts to substantiate an analogous cause of action."  *Id.*

(relying on *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.3d 1173, 1182-84 (Wash. 1998), and

stating that "an analysis of the scope of coverage . . . begins and ends with a comparison

between the offenses alleged in the underlying litigation and the offenses covered in the

disputed policies").  The court declined to hold that the underlying suit triggered

coverage "as a result of a semantic overlap between the disputed policy and the

underlying litigation, absent a showing that the underlying litigation invokes a tort that is

covered, *or is analogous to one covered*, by the disputed policy."  *Id.*  The court

concluded that the underlying complaints failed to "set forth specific facts which could be

reasonably construed to be analogous to any of the offenses enumerated in the disputed

advertising injury clauses."  *Id.* at *7; *see also id.* at *8 ("The conclusory use of the word

'disparaged' in the . . . complaint does not provide any basis for this Court to conclude

that the . . . plaintiffs have alleged acts of disparagement much less the tort of

disparagement.").

Similar to the *Microsoft* case, Stuc-O-Flex does not plead a cause of action for

product disparagement or one that is analogous.  (*See generally* Underlying Lawsuit

Compl.; Underlying Lawsuit Am. Compl.)  Further, contrary to Defendants' assertions,

Stuc-O-Flex does not allege facts that could support such a cause of action.  That is,

Stuc-O-Flex does not allege a false statement by Defendants that impugns the quality of Stuc-O-Flex products. *See Microsoft Corp.*, 2001 WL 765871, at *6. Moreover, Stuc-O-Flex does not allege "special damages in the form of lost profits from the loss of specific sales to a specifically identified purchaser that would have

occurred but for that purchaser hearing the false statement and declining to engage in that purchase." *See id.* [5]

Specifically, there is no allegation that any of the invoices referenced in Stuc-O-Flex's amended complaint contain statements disparaging Stuc-O-Flex's products. (*See, e.g.*, Underlying Lawsuit Am. Compl. ¶¶ 3.14, 3.18-3.19, 3.30, 6.9-6.10.) There is no allegation in either the original or amended complaint that Defendants made a single false statement anywhere impugning Stuc-O-Flex's products. (*See generally* Underlying Lawsuit Compl.; Underlying Lawsuit Am. Compl.) Even given a liberal construction, as is required, *see Truck Ins. Exch.*, 58 P.3d at 282, Defendants' interpretation of the complaints in the Underlying Lawsuit stretches Stuc-O-Flex's allegations too far. "[H]ypothetical unpleaded claims 'do not create "potential coverage"' entitling the insured to a defense." *See Atl. Cas. Ins. Co. v. Earth Metals & Junk Co.*, No. C13-1177 TSZ, 2014 WL 583988, at *2 (W.D. Wash. Feb. 12, 2014)

//

---

[5] Defendants assert that Massachusetts Bay's citation to *Microsoft Corp. v. Zurich Am. Ins. Co.*, 2001 WL 765871, violates Ninth Circuit Rule 36-3(c), which prohibits the citation of unpublished cases before January 1, 2007, except in limited circumstances. "Ninth Circuit Rule 36-3 does not bar a district court from considering the unpublished decisions of other federal district courts; however such decisions are not binding and are at most persuasive authority." *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1182 n.5 (N.D. Cal. 2004). Thus, the court here considers the *Microsoft* case for its persuasive authority. *See* 2001 WL 765871.

(quoting *Chicago Ins. Co. v. Ctr. for Counseling & Health Res.*, No. C10-0705 RSM, 2011 WL 1221019, at *2 (W.D. Wash. Mar. 31, 2011)).

Nevertheless, Defendants point the court to Stuc-O-Flex's third cause of action for a "trademark violation."[6] (*See* Def. Reply at 2; *see also* Underlying Lawsuit Am. Compl. ¶¶ 6.1-6.16.) Specifically, Defendants refer to paragraph 6.13 of the Underlying Lawsuit's amended complaint, which alleges a false designation of origin claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, as follows:

> Defendants acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties are false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, by causing confusion, mistake, and/or deception on the part of the consuming public who are likely to mistakenly believe that Defendants' products are somehow the same as Stuc-O-Flex's "Waterway" and "Waterway Rainscreen" line of rainscreen products, which they are not.

(Underlying Lawsuit Am. Compl. ¶ 6.13; *see also* Def. Reply at 2-3.) Defendants argue that this specific claim should be construed as analogous to a claim for product disparagement.[7] (Def. Reply at 2.)

---

[6] In passing and without analysis, Defendants also assert that Stuc-O-Flex's claim for violation of Washington's CPA is analogous to a claim for product disparagement under the policies. (*See* Def. Reply at 2.) The court disagrees. Stuc-O-Flex's allegations in its CPA claim that Defendants used the names "Waterway" and "Waterway Rainscreen" for "purposes of marketing" and "deceptively . . . redirected customers searching for . . . 'Waterway' and 'Waterway Rainscreen' . . . to . . . Defendants' products" do not allege a false statement by Defendants impugning the quality or integrity of Stuc-O-Flex's products. Accordingly, even liberally construed, these allegations do not state a claim for product disparagement. *See Microsoft Corp.*, 2001 WL 765871, at *6.

[7] In making this argument, Defendants rely upon a 2003 unpublished decision from the Ninth Circuit. (*See* Def. Reply at 2 (citing *Philips Oral Healthcare, Inc. v. Fed. Ins. Co.*, 83 F. App'x 963 (9th Cir. 2003)).) Defendants' citation to this pre-2007, unpublished decision is improper under Ninth Circuit Rule 36-3(c). Accordingly, the court does not consider the

Even if the court agreed that Stuc-O-Flex's Lanham Act claim for false designation of origin is analogous to a claim for product disparagement, which it does not, the policies at issue expressly exclude "personal or advertising injury" that "[a]ris[es] out of the infringement of copyright, patent, trademark, and trade secret or other intellectual property rights." (Colville Decl. ¶ 10, Ex. 8 at 75-76; *id.* ¶ 11, Ex. 9 at 100-01.) As Defendants point out, Stuc-O-Flex's trademark claim alleges both a claim for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. (*See* Underlying Lawsuit Am. Compl. ¶¶ 6.12-6.13; Def. Resp. at 19.) This fact, however, does not alter the court's conclusion that this claim is excluded under the policies' language. The foregoing exclusion applies not just to a claim for trademark infringement, but also for infringement of "other intellectual property rights." (Colville Decl. ¶ 10, Ex. 8 at 75-76; *id.* ¶ 11, Ex. 9 at 100-01.) The court has no difficulty in concluding that a claim for false designation of origin under Section 43(a) of the Lanham

//

//

---

decision and warns Defendants to refrain from further violations of any applicable court rules or risk the court's imposition of sanctions.

Nevertheless, even if the court were to consider the *Philips Oral Healthcare* decision, it does not compel a different result here. The allegations in the underlying complaint in *Philips Oral Healthcare* were distinct from the allegations in the Underlying Lawsuit complaints here. In *Philips Oral Healthcare*, the underlying claimant alleged that the insured made false and misleading claims in its commercial advertising that would lead consumers to believe incorrectly that the claimant's product lacked the capabilities of the insured's product. *See* 83 F. App'x at 964. The fact that the *Philips Oral Healthcare* court construed these specific allegations to constitute a product disparagement claim under the policies at issue there, *see* 83 F. App'x at 965-66, does not compel the same result here.

Act, 15 U.S.C. § 1125(a), falls within the foregoing exclusion for "other intellectual property rights."[8]

Thus, based on the foregoing analysis, the court concludes that the complaints in the Underlying Lawsuit do not allege a claim for the tort of product disparagement, and Subpart d of the policies does not "conceivably" cover Stuc-O-Flex's allegations. *See Am. Best Food, Inc.*, 229 P.3d at 696. Accordingly, Massachusetts Bay is not required to provide a defense to Defendants based on Subpart d of the policies.

**2. Use of Another's Advertising Idea in Your Advertisement**

Subpart f of the definition of "personal and advertising injury" describes the following offense: "The use of another's advertising idea in your 'advertisement.'" (11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 81-82.) Throughout the policies, "the words 'you' and 'your' refer to the [n]amed [i]nsured," which is identified in the Declarations pages of the policies as Walflor. (*See* Colville Decl. ¶ 10, Ex. 8 at 13, 25; *id.* ¶ 11, Ex. 9 at 24, 36.) Thus, the offense in Subpart f requires the use of Stuc-O-Flex's advertising ideas in Walflor's advertisement. The term "advertisement," in turn, is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (*Id.* ¶ 10, Ex. 8 at 80; *id.* ¶ 11, Ex. 9 at 81.) Massachusetts Bay argues that there are no

---

[8] The exclusion at issue expressly excepts only "the use of another's advertising idea in your 'advertisement'" from the phrase "other intellectual property rights." Further, the exclusion expressly "does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." (Colville Decl. ¶ 10, Ex. 8 at 75-76; *id.* ¶ 11, Ex. 9 at 100-01.) Neither of these exceptions to the exclusion are applicable to Stuc-O-Flex's claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

allegations in either the Underlying Lawsuit's complaint or the amended complaint that

Walflor broadcast or published a notice about its products for the purpose of attracting

customers and used one of Stuc-O-Flex's advertising ideas in that published notice. (Plf.

MSJ at 11-12.)

There is no explicit reference in either the Underlying Lawsuit's original or

amended complaint to advertising. (*See generally* Underlying Lawsuit Compl.;

Underlying Lawsuit Am. Compl.) Nevertheless, the amended complaint in the

Underlying Lawsuit makes three brief references to Defendants' use of the names

"Waterway" and "Waterway Rainscreen" "for purposes of marketing . . . to

third-parties."[9] Defendants argue that the court should construe the term "marketing" to

include advertisement, and that these allegations support their claim for coverage under

Subpart f of the policies. (*See* Def. Resp. at 7-8; Def. Reply at 5.) Defendants also argue

that extrinsic evidence supports their claim, and they produce a copy of an advertisement

with their responsive memorandum that includes the terms "Waterway" and

"Rainscreen." (*See* Def. Resp. at 4; 12/10/18 Alvord Decl. (Dkt. # 37) ¶ 3, Ex. 3.)

First, the terms "[m]arketing and advertising are not synonymous." *Cont'l Ins.*

*Co. v. Am. Equity Ins. Co.*, No. A109642, 2006 WL 787975, at *8 (Cal. Ct. App. Mar. 29,

---

[9] Paragraph 6.12 states in relevant part: "Defendants' acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties constitutes trademark infringement . . . ." (Underlying Lawsuit Am. Compl. ¶ 6.12.)

Paragraph 6.13 states in relevant part: "Defendants' acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties are false designations of origin . . . ." (*Id.* ¶ 6.13.)

Paragraph 7.2 states in relevant part: "Defendants' acts of using the names "Waterway" and "Waterway Rainscreen" for purposes of marketing and selling materials to third-parties constitute an unfair and deceptive act or practice . . . ." (*Id.* ¶ 7.2.)

2006) (citing *W. States Ins. Co. v. Wisc. Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999)).  Indeed, despite a requirement to liberally construe the underlying complaint in the insured's favor, the Seventh Circuit declined "to treat 'advertising' as equivalent to 'marketing'" in the context of analyzing an insured's advertising injury claim and concluded that to do so would "torture ordinary words until they confess to ambiguity." *W. States Ins. Co.*, 184 F.3d at 702.  Indeed, the Seventh Circuit concluded that treating the term marketing as the equivalent of advertising would result in "any effort to sell" being covered under the advertising injury portion of the policy—an outcome not contemplated by a "sensible reading" of the policy.  *Id.*

The court has no doubt that in some factual contexts, with additional underlying allegations not present here, the term "marketing" may be appropriately construed as "advertising" or an "advertisement."  For example, in *Australia Unlimited, Inc. v. Harford Insurance Co.*, a case relied upon by Defendants,[10] the underlying complaint alleged that the insured "market[ed] . . . footwear that infринge[d] the [underlying claimant's] [t]rade [d]ress."  198 P.3d 514, 519 (Wash. Ct. App. 2008).  The underlying complaint also alleged that the insured sold the product at issue "through its website . . . which provides a link to 'authorized online dealers.'"  *Id.*  In this factual context, there was no dispute between the parties that the allegations in the complaint, including allegations that the insured "market[ed]" the product and sold it "through its website," alleged an "advertisement" within the terms of the policy.  *See id.* ("[The insurer] does

//

---

[10] (*See* Def. MSJ at 10; Def. Reply at 5.)

not dispute that the allegations of the [underlying] complaint allege 'advertisement' within the terms of the policy.").  On these facts, the Washington Court of Appeals agreed that the definition of "advertisement" within the policy was met.  *Id.* ("Read together, keeping in mind the liberal pleading standards . . . , we conclude that these allegations . . . support the conclusion that [the underlying claimant's] allegations constitute 'advertisement' within the terms of the policy."); *see also Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*, 600 F.3d 1092, 1098-99 (9th Cir. 2010) (concluding that the terms "marketing methods" or "marketing systems" fell within the definition of "advertising" when extrinsic evidence known to the insurer demonstrated that the insured used the feature on its website to promote its products and that it was widely disseminated to the public through the website).

However, the allegations that were present in *Australia Limited*, which allowed the court and the parties to liberally construe allegations of "marketing" to mean "advertisement," are not present here.  As noted above, there is no allegation in the Underlying Lawsuit that either Stuc-O-Flex or Defendants engaged in advertising on a website, in print, or otherwise; neither have Defendants produced any extrinsic evidence demonstrating these facts.  In the absence of these or similar allegations tying the term "marketing" to some form of advertising, the court is unwilling to stretch three passing references to the term "marketing"[11] as fulfilling the requirement of Subpart f that the offending advertising idea be used "in your 'advertisement.'"  (*See* Colville Decl. ¶ 10,

//

---

[11] (*See* Underlying Lawsuit Am. Compl. ¶¶ 6.12-6.13, 7.2.)

Ex. 8 at 13, 25; *id.* ¶ 11, Ex. 9 at 24, 36.) Construing the term "advertisement" to include "marketing" as it is referenced in the Underlying Lawsuit's amended complaint would not represent "a fair, reasonable, and sensible construction" of the policies "as would be given . . . by the average person purchasing insurance." *See Weyerhaeuser Co.*, 15 P.3d at 122 (internal quotations omitted).

Further, the extrinsic evidence Defendants rely upon to bolster their claim under Subpart f also does not establish coverage. The advertisement that Defendants attach to their responsive memorandum is not their own. (*See* Def. Resp. at 4; 12/10/18 Alvord Decl. ¶ 3, Ex. 2.) On its face, this advertisement is from Trowel Trades Accessories, Ltd. ("Trowel Trades"), which is not a party to this suit. (*See* 12/10/18 Alvord Decl. ¶ 3, Ex. 2.) Further, nothing in the evidence Defendants provide connects Trowel Trades or its advertisement to Defendants. (*See id.*)[12] As noted above, the offense in Subpart f requires the use of Stuc-O-Flex's advertising ideas in Walflor's advertisement. (*See* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 81-82 ("The use of another's advertising idea in your 'advertisement.'"); *see also* (*See* Colville Decl. ¶ 10, Ex. 8 at 13, 25; *id.* ¶ 11, Ex. 9 at 24,

//

---

[12] During discovery in the Underlying Lawsuit, Defendants asked Stuc-O-Flex to describe "each and every instance of which [Stuc-O-Flex was] aware in which any person has been in any way confused, mistaken, or deceived as to the origin of any Marked Products sold or offered for sale by Walflor . . . ." (11/21/18 Alvord Decl. ¶ 4, Ex. 3 at 15.) Defendants also asked Stuc-O-Flex to describe "in detail the date and circumstances when [Stuc-O-Flex] learned that . . . Walflor [was] 'selling . . . marked Products directly to [Stuc-O-Flex's] competitors without [Stuc-O-Flex's] consent' . . . ." (*Id.* at 16.) In response to these two interrogatories, Stuc-O-Flex identified the Trowel Trades advertisement, which described Trowel Trades as the "Exclusive Canadian Distributor for Waterway Rainscreen & Ventilation Mat." (*See id.* at 15-16, 18.) Yet, nothing in Stuc-O-Flex's discovery responses specifically ties the Trowel Trades advertisement to Defendants.

36 ("[T]he words 'you' and 'your' in the policies mean the [n]amed [i]nsured.").) Thus, Trade Trowel's advertisement is not relevant to the court's coverage analysis.

In addition, the invoices referenced in the Underlying Lawsuit's original and amended complaints also do not constitute "advertisements" as that term is defined in the policies. As stated earlier, the policies define an "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 80.) If a policy term is undefined, then the court should give the term its "'plain, ordinary, and popular' meaning." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990) (quoting *Farmers Ins. Co. v. Miller*, 549 P.2d 9, 11 (Wash. 1976)). Further, "courts may look to the dictionary to determine the common meaning" of an undefined policy term. *Black v. Nat'l Merit Ins. Co.*, 226 P.3d 175, 178 (Wash. Ct. App. 2010). Neither the term "broadcast" nor the term "publish" are defined in the policies. Merriam-Webster's Dictionary defines "publish" as "to make generally known," "to make public announcement of," and "to disseminate to the public." Merriam-Webster's Collegiate Dictionary, 952 (11th ed. 2004). It defines "broadcast" as "to make widely known" or "to transmit or make public by means of radio or television." *Id*. at 156. Given the foregoing rules of construction and the common meanings of the terms "broadcast" and "publish," the court is unwilling to construe an invoice sent to a single customer as "a notice that is broadcast or published to the general public or specific market segments" as required by the policies. (11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 80.)

Moreover, for an invoice to be an "advertisement," it must be sent "for the purpose of attracting customers or supporters." (*Id.*) Merriam-Webster's Dictionary defines an "invoice" as "an itemized list of goods usu[ally] specifying the price and the terms of sale: Bill." Merriam-Webster's Collegiate Dictionary, 659 (11th ed. 2004). Thus, an invoice, by definition, is sent to a customer to secure payment for goods supplied; it is not sent "for the purpose of attracting customers or supporters" as required under the policies to constitute an "advertisement." (*See* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 80.) For these reasons, the court concludes that references to invoices in the Underlying Lawsuits' original and amended complaints do not support Defendants' claim for coverage under Subpart f of the policies.

Based on the foregoing analysis, the court concludes that the complaints in the Underlying Lawsuit do not allege a claim for the offense of "[t]he use of another's advertising idea in your 'advertisement'" (*see* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 81-82), and thus Subpart f of the policies does not "conceivably" cover Stuc-O-Flex's allegations, *see Am. Best Food, Inc.*, 229 P.3d at 696. Accordingly, Massachusetts Bay is not required to provide a defense to Defendants based on Subpart f of the policies.

### 3. Infringing upon Another's Trade Dress or Slogan

Subpart g of the definition of "personal and advertising injury" describes the following offense: "Infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (12/10/18 Alvord Decl. ¶ 3, Ex. 2 at 82-83.) Defendants assert that the court should construe the complaints in the Underlying Lawsuit to allege both trade dress

//

and slogan infringement and conclude that these allegations fall within Subpart g of the policies. (*See* Def. MSJ at 5-6, 9-13; *see also* Def. Resp. at 8-12.) Massachusetts Bay argues that the complaints do not allege either trade dress or slogan infringement, and therefore, there is no coverage under Subpart g. (Plf. MSJ at 13-17; Plf. Resp. at 10-14.) The court need not decide if the complaints in the Underlying Lawsuit allege either trade dress or slogan infringement because, as discussed above, neither complaint makes any reference to any of this activity occurring in one of Walflor's advertisements. *See supra* § III.C.2.

As discussed above, the advertisement upon which Defendants rely, on its face, is Trade Trowel's and not Walflor's advertisement, and Defendants submit no extrinsic evidence tying the advertisement to Walflor. *See id.*; *see also supra* n.12. Thus, the advertisement is irrelevant to the court's coverage analysis. Further, there are no allegations in the Underlying Lawsuit that any of the invoices referenced in the complaints contained the allegedly infringing slogans or infringing trade dress. (*See generally* Underlying Lawsuit Compl.; Underlying Lawsuit Am. Compl.) But even if there were such allegations, the court has already concluded that the invoices are not "advertisements" within the meaning of the relevant policy provisions. *See supra* § III.C.2.

Defendants additionally submit two photographs of rolled up-mats, which are labeled as "Waterway Rainscreen," to try to show a claim for trade dress or slogan infringement. (12/10/18 Alvord Decl. ¶ 4, Ex. 3.) To the extent Defendants argue that the labels on these rolled up mats could be construed as "advertisements," the court

rejects this notion. In this context, labels are not "published" or "broadcast" to "the general public or specific market segments" as is required under the policies' language (*see* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 80), but rather directed to the specific customer who ordered or purchased the product. Further, the labels are not placed on the product at issue "for the purpose of attracting customers or supporters" as is also required under the policies' language (*see id.*), but rather to identify the product that a specific customer receives.

Finally, there is no evidence in the record demonstrating that the products depicted in the photographs were manufactured and sold by either Stuc-O-Flex or Defendants.[13] Thus, even if these labels could be construed as "advertisements" within the policies' definition, there is no evidence indicating that they belong to Defendants—as is required under the policies. (*See* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 82-83 (describing the "personal and advertising injury" offense in Subpart g of the policies as: "Infringing upon another's copyright, trade dress or slogan in *your* 'advertisement'") (emphasis added); Colville Decl. ¶ 10, Ex. 8 at 13, 25; *id.* ¶ 11, Ex. 9 at 24, 36 (stating that "throughout the coverage form the words 'you' and 'your' refer to the [n]amed [i]nsured" and identifying the named insured as Walflor).)

For the foregoing reasons, the court concludes that the complaints in the Underlying Lawsuit do not allege a claim for the offense of "[i]nfringing upon another's

---

[13] The only evidence before the court concerning these photographs states that the photographs were produced by Stuc-O-Flex in the Underlying Lawsuit. (12/10/18 Alvord Decl. ¶ 4.) There is no evidence connecting these photographs or the product depicted in them to Defendants. (*See id.*)

copyright, trade dress or slogan in your 'advertisement'" (*see* 11/21/18 Alvord Decl. ¶ 3, Ex. 2 at 82-83), and thus Subpart g of the policies does not "conceivably" cover Stuc-O-Flex's allegations, *see Am. Best Food, Inc.*, 229 P.3d at 696. Accordingly, Massachusetts Bay is not required to provide a defense to Defendants in the Underlying Lawsuit based on Subpart g of the policies at issue.

### 4. Summary

Based on the foregoing analysis, the court concludes that Massachusetts Bay's duty to defend is not triggered because the claims at issue "clearly fall outside the policy." *See Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013). Accordingly, after analyzing the parties' cross motions under the appropriate standard, the court DENIES the portion of Defendants' motion seeking a declaration that Massachusetts Bay owes Defendants a duty to defend them in the Underlying Lawsuit (*see* Def. MSJ at 1, 5-13), and GRANTS the portion of Massachusetts Bay's motion seeking a declaration that it has no such duty to defend (Plf. MSJ at 7-17).[14]

### D. Reimbursement of Defense Costs

The policies at issue each contain a "**WASHINGTON CHANGES – DEFENSE COSTS**" endorsement, which provides:

> The following applies to any provision in this Policy, or in any endorsement attached to the Policy that sets forth a duty to defend:

---

[14] Massachusetts Bay also argues that coverage for Stuc-O-Flex's claims against Defendants and a corresponding duty to defend are excluded under two additional clauses of the policies for personal and advertising injury arising out of (1) a breach of contract, and (2) a knowing violation of the rights of another. (*See* Plf. MSJ at 17-19.) Because the court concludes that there is no coverage under the relevant insuring provisions of the policies, it need not reach these issues.

> If we initially defend an insured or pay an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense of the payment of defense costs and to seek reimbursement for defense costs.

(Colville Decl. ¶ 10, Ex. 8 at 137; *id.* ¶ 11, Ex. 9 at 157.)  In Massachusetts Bay's correspondence with Defendants, in which it agreed to defend Defendants under a reservation of rights in the Underlying Lawsuit, Massachusetts Bay also informed Defendants of the foregoing endorsement and reserved its "right to terminate the defense . . . and to seek reimbursement . . . of the defense costs paid."  (*Id.* ¶ 8, Ex. 6 at 3; *id.* ¶ 9, Ex. 7 at 10.)

Based on the foregoing endorsement and its notifications to Defendants concerning the endorsement, Massachusetts Bay seeks a ruling on summary judgment that it is entitled to recoup the defense costs it incurred in the Underlying Lawsuit.  (Plf. MSJ at 20-24.)  Defendants, on the other hand, ask the court to invalidate the endorsement, or alternatively, to certify the question of the endorsement's validity to the Washington Supreme Court.  (Def. MSJ at 13-21.)

Pursuant to a Washington statute, a federal court may certify certain questions to the Washington Supreme Court as follows:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question

of local law involved and the supreme court shall render its opinion in answer thereto.

RCW 2.60.020. "The decision to certify a question to a state supreme court rests in the sound discretion of the district court." *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003). "Even where state law is unclear, resort to the certification process is not obligatory." *Riordan v. State Farm Mut. Auto. Ins. Co*. 589 F.3d 999, 1009 (9th Cir. 2009). "Furthermore, '[m]ere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit.'" *Id.* (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974)). As discussed below, the court finds sufficient guidance in prior decisions of the Washington Supreme Court to resolve this issue. Accordingly, the court DENIES Defendants' request to certify the question to the Washington Supreme Court. The court now turns to the issue presented by the parties: the enforceability of Massachusetts Bay's defense costs reimbursement endorsement.

In urging the court to deny Massachusetts Bay's motion for summary judgment that it is entitled to recoup its defense costs expended in the Underlying Lawsuit, Defendants do not take issue with the intended effect of the endorsement or assert that the endorsement is ambiguous; nor do they dispute that Massachusetts Bay notified them in its reservation of rights letters of its intent to rely on the endorsement to recoup its defense costs. (*See generally* Def. MSJ at 13-20; Def. Resp. at 20-23; Def. Reply at 11-12.) Instead, Defendants' argument rests entirely on the notion that the endorsement violates public policy. (*See* Def. MSJ at 13-21; Def. Resp. at 20-23; Reply at 11-12.) Thus, the court confines its analysis to that issue.

Washington "[c]ourts are reluctant to invalidate an insurance policy clause on the grounds of public policy, but will do so if the clause is prohibited by statute, condemned by judicial decision or contrary to public morals." *Safeco Ins. Co. of Ill. v. Auto. Club Ins. Co.*, 31 P.3d 52, 54 (Wash. Ct. App. 2001). Defendants rely on *National Surety Corp. v. Immunex Corp.*, 297 P.3d 688 (Wash. 2013), to support their argument that Washington has rejected an insurer's right to reimbursement of defense costs. (Def. MSJ at 21.) The insurer in *Immunex* attempted to reserve its right to recoup its defense costs in the event a court determined that it did not owe a duty to defend, but the policy at issue did not contain any language allowing such recoupment. 297 P.3d at 690. Although the Washington Supreme Court's reasoning in *Immunex* informs the court's decision, the *Immunex* holding does not control the outcome here. Indeed, the *Immunex* Court narrowly defined the issue before it as "whether [an] insurer may *unilaterally* condition its reservation of rights defense on making the insured absorb the defense costs if a court ultimately determines there is no coverage." 297 P.3d at 689 (emphasis added). To that narrow question, the court responded, "no," *id.* at 689, and further stated that to "allow[] recoupment to be claimed in a reservation of rights letter would allow the insurer to impose a condition on its defense that was *not bargained for*," *id.* at 694 (emphasis added).

But that is not the question presented to this court. Unlike the policy in *Immunex*, the Massachusetts Bay policies include an express endorsement stating that Massachusetts Bay is entitled "to seek reimbursement for defense costs" if it initially defends an insured or pays for an insured's defense but it is later determined that none of

the claims are covered.  (Colville Decl. ¶ 10, Ex. 8 at 137; *id.* ¶ 11, Ex. 9 at 157.)

Defendants nevertheless argue that the *Immunex* court's ruling applies to situations, like here, where the policy contains explicit language reserving the right to recover defense costs if a court ultimately determines that no such duty exists.  Defendants ground their argument on the court's following statement:  "We hold that insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain."  *Immunex*, 297 P.3d at 695.  Defendants maintain that the *Immunex* court did not expressly limit its holding to those situations in which the policy does not contain a defense costs recoupment provision, and so this court should apply that holding here.  (*See* Def. MSJ at 21; Def. Reply at 11.)  Although the quote Defendants cite is expansive, it must be read in the context of the specific issue the *Immunex* court stated it was deciding—"whether [an] insurer may *unilaterally* condition its reservation of rights defense on making the insured absorb the defense costs if a court ultimately determines there is no coverage."  *See Immunex*, 297 P.3d at 689 (emphasis added).  So read, the *Immunex* court's holding is considerably narrower than Defendants insist and does not control the outcome here.

Indeed, the *Immunex* court's intent to so cabin its holding is reinforced by the court's repeated reliance upon cases that carve out an exception where the insurance contract expressly provides for defense cost reimbursement.  For example, the *Immunex* court relies upon and quotes from *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510 (Wy. 2000), in which "the Wyoming Supreme Court held that '*unless an agreement to the contrary is found in the policy*, the insurer is liable for all of the costs of

defending the action.'" *See Immunex*, 297 P.3d at 693 (emphasis added) (quoting *Shoshone*, 2 P.3d at 514). Likewise, the *Immunex* court relies upon and quotes from the Pennsylvania Supreme Court, which expressly limited its holding prohibiting the recovery of defense costs to those situations "[w]here the insurance contract is silent about the insurer's right to reimbursement of defense costs." *See id.* (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 544 (Pa. 2010)). Indeed, the *Immunex* court relies upon numerous other similar authorities. *See, e.g.*, *id.* (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102 (Ill. 2005) (holding that "[a]s a matter of public policy, we cannot condone an arrangement where an insurer can *unilaterally modify its contract*, through a reservations of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend") (emphasis added), and *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1090 (D. Nev. 1999) (holding that, under Nevada law, reimbursement for defense costs is allowed only if an agreement between the parties provides for reimbursement)). Thus, as in the cases upon which the *Immunex* court relies, the court here concludes that the right to reimbursement of defense costs in Washington turns on the express language provided in the insurance contract.

Defendants, however, also rely upon *Attorneys Liability Protection Society, Inc. v. Ingaldson Fitzgerald, PC*, 370 P.3d 1101, 1112 (Alaska 2016), to argue that Massachusetts Bay's defense costs reimbursement endorsement is against public policy. (*See* Def. MSJ at 20-21.) The court, however, is not persuaded by the ruling in *Ingaldson Fitzgerald*. In that case, the Alaska Supreme Court held that the state's independent

counsel statute, AS 21.96.100, precludes the enforcement of language in a professional liability policy granting the insurer the right to recoup defense costs. *See Ingaldson Fitzgerald, PC*, 370 P.3d at 1112. The Alaska Supreme Court stated that the question before it was "whether [AS 21.96.100] is correctly read as a prohibition on reimbursement." *Ingaldson Fitzgerald*, 370 P.3d at 1107. The court found that "[a] review of the statutory text indicates that reimbursement is prohibited, and because there is no evidence of contrary legislative purpose or intent, [the court] conclude[d] that the statute prohibits reimbursement provisions." *Id.* Washington has no similar statute.

Defendants nevertheless argue that "Washington accomplishes the same thing [as AS 21.96.100] under *Tank* [*v. State Farm Fire & Casualty Co.*, 715 P.2d 1133 (Wash. 1986),] and its progeny." (Def. Reply at 12.) The court, however, does not believe that *Tank* can be stretched so far as to prohibit defense cost reimbursement where the policy so provides. Under *Tank*, an insurer defending under a reservation of rights has an "enhanced obligation of fairness towards its insured." 715 P.2d at 1135. However, the *Tank* court did not place unbounded new responsibilities on insurers. Rather, the court "enumerate[ed] specific criteria which comprise th[e] enhanced obligation." *Id.* at 1138. In particular, an insurer defending under a reservation of rights must: (1) "thoroughly investigate" the claim; (2) "retain competent defense counsel" loyal only to the insured; (3) "fully inform[] the insured not only of the reservation-of-rights defense," but of the progress of the lawsuit; and (4) refrain from "engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." *Id.* at 1137.

Nothing in the endorsement at issue here interferes with an insurer's obligations to comply with *Tank*'s "specific criteria" while defending under a reservation of rights. Further, unlike AS 21.96.100, which the Alaska Supreme Court specifically read as prohibiting a reimbursement provision, *Tank* does not prohibit an insurer from including such a provision in a business owners policy. Thus, the court finds no basis for invalidating the endorsement on public policy grounds and concludes that Massachusetts Bay is entitled to recoup the defense costs it paid in the Underlying Lawsuit. Accordingly, the court GRANTS this portion of Massachusetts Bay's motion for summary judgment and DENIES Defendants' motion on the same issue.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Massachusetts Bay's motion for summary judgment (Dkt. # 33) and DENIES Defendants' cross motion (Dkt. # 31).

Dated this 17th day of April, 2019.

JAMES L. ROBART
United States District Judge